# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0338-19T3

E.V.,

    Plaintiff-Respondent,

v.

L.G.,

    Defendant-Appellant.

_____

        Submitted September 16, 2020 – Decided September 24, 2020

        Before Judges Ostrer and Enright.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-0029-20.

        Aleksandra N. Gontaryuk, attorney for appellant.

        Respondent has not filed a brief.

PER CURIAM

Defendant L.G.[1] appeals from an August 12, 2019 final restraining order (FRO) entered in favor of plaintiff E.V., pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. We affirm, substantially for the reasons set forth in Judge Angela White Dalton's cogent oral decision.

We will not recite in detail the history between the parties. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge White Dalton's decision. We add the following comments.

The parties were previously married and have two teenage children. They have had ongoing disputes over child support and parenting issues. While in court before a different judge regarding such matters, L.G. assaulted E.V., her former husband. That same day, E.V. obtained a temporary restraining order (TRO) against L.G.

At the FRO hearing that followed, plaintiff testified that he requested a TRO because defendant jumped on his back, causing him pain, and he feared that she would continue to harass him. Defendant admitted she

> hit [plaintiff] there in front of the judge, because my other daughter was making fun of my [eleven-]year [-]old daughter because her father's in jail.

---

[1] We refer to the parties by initials to protect their privacy. R. 1:38-3(d)(9).

A-0338-19T3

[A]nd now he's be[en] putting ideas in my children's minds that they should be with him, that they would be better off with him.

Judge White Dalton asked defendant why she "jump[ed]" plaintiff in the courtroom and she responded, "[b]ecause he's never helped either my husband or I with the children." The judge then inquired why defendant jumped on plaintiff's back, and defendant replied, "[b]ecause I'm finally tired and angry . . . because of all of the problems that he's caused me and my family." She further explained she assaulted plaintiff "when he told the judge that I had said that he was an ungrateful dog and I said, that's what you are." Additionally, defendant testified that plaintiff previously physically assaulted her.

Plaintiff responded to defendant's allegations and testified that his former spouse "does not bother me now because the [restraining] order is there. She -- as soon as there's no order, she's going to be texting me, she's going to be assaulting me by phone, and with the children. I know what she's like."

After taking a brief recess, Judge White Dalton rendered her oral decision. She concluded, "it's uncontroverted, in the presence of the court, the defendant jumped on the plaintiff, attacked him, hit him, assaulted him. He testified today that he felt pain." Accordingly, the judge found defendant committed the predicate act of assault, N.J.S.A. 2C:12-1.

A-0338-19T3

Regarding whether an FRO should issue, the judge noted that plaintiff did not complain about a prior history of domestic violence. Nonetheless, she found the parties were "still in the midst of" litigation, that they could not "agree that the sky is blue or the sun is out today. There is an escalation here as a result of something that is going on between the minor children." Moreover, the judge found that because the parties had children together, and "there's fighting, there's arguments," there was a need for an FRO. The judge was particularly struck by the fact that defendant, "in the middle of the courtroom, with law enforcement, would . . . physically assault the other party." She concluded, "that, in and of itself, speaks for the need for a final restraining order today."

On appeal, defendant argues that Judge White Dalton erred in granting an FRO because she failed to consider "vital testimonial evidence" and "issued a finding inconsistent with domestic violence law in New Jersey." These arguments lack merit.

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). First, the judge must determine if the plaintiff has proven, by a preponderance of evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). Id. at 125-26. The judge must construe any such acts in

light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); N.J.S.A. 2C:25-29(a)(1). "[N]ot only may one sufficiently egregious action constitute domestic violence under the Act, even with no history of abuse between the parties, but a court may also determine that an ambiguous incident qualifies as prohibited conduct, based on a finding of violence in the parties' past." Cesare v. Cesare, 154 N.J. 394, 405 (1998).

Next, if a predicate offense is proven, a court must assess "whether a restraining order is necessary, upon an evaluation of the facts set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 127). Whether a restraining order should issue depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)); Cesare, 154 N.J. at 402.

Applying these standards to L.G.'s arguments, we are satisfied there was ample evidence to support Judge White Dalton's finding that E.V. satisfied each <u>Silver</u> prong. Indeed, since defendant conceded she committed the predicate act of assault, the judge appropriately found the first <u>Silver</u> prong was satisfied. Further, there was enough evidence to support the judge's conclusion that plaintiff needed an FRO to prevent defendant from inappropriately communicating with him and to stop the escalation of the parties' conflicts. As the judge noted, because there was ongoing litigation and fighting between the parties, there was a need to stop the escalation of conflict.

Our review of a trial judge's fact-finding function is limited. <u>Cesare</u>, 154 N.J. at 411. A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." <u>Id.</u> at 411-12 (quoting <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." <u>Id.</u> at 413. This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record." <u>N.J. Div. of Youth & Family Servs. v. G.M.</u>, 198 N.J. 382, 396 (2009) (quoting <u>N.J. Div. of Youth & Family Servs.</u>

A-0338-19T3

v. E.P., 196 N.J. 88, 104 (2008)).  A judge's purely legal decisions, however, are subject to our plenary review.  Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).  Tethered to these standards, we perceive no basis to disturb Judge White Dalton's finding that defendant's decision to physically assault plaintiff "in the middle of the courtroom, with law enforcement" present, due to her frustration with plaintiff's handling of "the co-parenting situation," warranted the entry of the FRO.

To the extent we have not addressed defendant's remaining arguments, we find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7

A-0338-19T3